IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD P. THOMAS,                    )
                                      )     Civil Action No. 13-551
         Plaintiff,                   )
                                      )     Magistrate Judge Cynthia Reed Eddy
                                      )
    v.                                )
                                      )
KIMBERLY A. BARKLEY; STEVEN           )
KELLER; CATHERINE MCVEY; JOHN         )
J. TALABER;  MICHAEL POTTEIGER;       )
LLOYD A. WHITE,                       )
                                      )
         Defendants.                  )

MEMORANDUM OPINION

Richard P. Thomas ("Thomas" or "Plaintiff"), a former state prison inmate, filed this suit

pursuant to 42 U.S.C. § 1983 against six current and former members of the Pennsylvania Board

of Probation and Parole ("the Board").[1] Named as Defendants are Kimberly A. Barkley

("Barkley"), the Board Secretary; Steven Keller ("Keller"), a Board hearing examiner; Catherine

McVey ("McVey"), former Board Chair; Lloyd White ("White"), former Board Chair; Michael

Potteiger ("Potteiger"), current Board Chair; and John Talaber ("Talaber"), the Board's Assistant

Counsel and Administrative Review Designee. [ECF No. 1 at pp. 1-2]. The Complaint comprises

two Counts. In Count I, Thomas alleges that his rights under the Eighth Amendment to the

United States Constitution were violated when the Board's miscalculation of his maximum

sentence resulted in his remaining incarcerated for five months beyond his maximum release

date. Specifically, Thomas contends that when Talaber responded to Thomas' request for an

evidentiary hearing on this miscalculation, Talaber knowingly omitted the issue from the hearing

---

[1]  In accordance with 28 U.S.C. § 636 (c)(1), all parties have consented to have this matter
adjudicated by a United States Magistrate Judge. [ECF Nos. 11, 12, 13].

agenda, thereby "exhibiting deliberate indifference to Plaintiff's plight." [Id. ¶ 28]. According to Thomas, had Talaber included this issue with the other issue scheduled for review, "the miscalculation would have been reviewed, and Plaintiff would not have been imprisoned beyond the length of his sentence." [Id.]. In the same Count, Thomas alleges that Keller also exhibited deliberate indifference in violation of the Eighth Amendment by refusing to consider this calculation error. "Had Defendant Keller addressed the issue at the hearing, and heard evidence regarding the miscalculation, Plaintiff would not have been imprisoned beyond the length of his sentence." [Id. ¶ 29]. Keller and Talaber are the only Defendants named in Count I.

In Count II, Thomas alleges that his Fourteenth Amendment procedural due process rights were violated when he was denied notice and the right to be heard regarding a credit for time served to which he was entitled. [Id. at p. 7]. After detailing the duties of the Board Chair, Thomas alleges that McVey, who served as Chairperson from 2003 until July 7, 2011, "acting under the authority of the Commonwealth of Pennsylvania, established and maintained a procedure in which the appeals process for calculat[ing] . . . maximum sentences did not afford [Plaintiff] the ability to have all of his claims [considered at a single] hearing." [Id. ¶¶ 32, 35]. McVey is also alleged to have acted with deliberate indifference in failing to establish "a training process through which Board administrators and representatives [could] learn to accurately calculate sentences and provide adequate hearings to address miscalculation issues." [Id. ¶ 36]. White and Potteiger's alleged liability for violating Thomas's Fourteenth Amendment rights rests on their having maintained these practices and procedures "throughout the time in which Plaintiff should have been free[,]" and "acting under the authority of the Commonwealth of Pennsylvania, fail[ing] to review Plaintiff's sentence calculation after being informed of the issue through the appropriate channels." [Id. ¶ 37].

In Count II, Thomas also focuses on Barkley, outlining her duties as Board Secretary. The Office of the Board Secretary "oversees four divisions: Hearing Examiners . . . , Case Management, Case Analysis and Case Implementation and Resolution." [Id. ¶ 38] As "custodian of all active parole files, the Secretary acts as the Board's liaison with the Department of Corrections." [Id.]. According to Thomas, Barkley, "subjected [him] to a due process violation by failing to establish a training process through which Hearing Examiners and other officials can learn to accurately calculate sentences and provide adequate hearings to address miscalculation issues raised by prisoners." [Id. ¶ 39]. Thomas contends that Keller and Talaber, too, "were instrumental in denying [him] his right to due process" in that they "directly deprived [him] of a meaningful opportunity to be heard by failing to afford him [a single] evidentiary hearing on every issue regarding the calculation of his sentence." [Id. ¶ 40].

The Court considers here Defendants' pending Motion to Dismiss [ECF No. 9] filed pursuant to Fed. R. Civ. P. 12(b)(6). The Court will grant the Motion.

## The Facts

The facts in this matter are straightforward.[2] In 2005, Thomas pled guilty to multiple robbery charges, and was sentenced to two-and-a-half years to six years of imprisonment in a state institution. [ECF No. 1-7 at p. 1]. He was paroled from this sentence on March 25, 2007. As a condition of parole, Thomas was ordered to receive drug treatment. Thus, from August 27, 2006 to October 11, 2007, he resided in the Gateway Braddock group home, and from October 12, 2007, to January 9, 2008 in the Penn Pavilion group home. [ECF No. 1-6 at p. 6]. On January

---

[2] In resolving this Motion, the Court has considered the allegations in the Complaint and exhibits attached thereto. See Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir 2004) (identifying documents on which a court may rely in resolving a motion to dismiss for failure to state a claim).

3

21, 2009, Thomas was arrested for criminal trespass. He pled guilty to the charge, and was sentenced to twenty-three months in the Allegheny County Jail. [Id.].

In a September 9, 2009 revocation decision, the Board notified Thomas that he would be recommitted on the initial robbery charges because he pled guilty to the trespass charge. [Id.]. In a recalculation order sent the same day, The Board set the maximum term on the original charges at August 5, 2012. [Id.]. In setting this date, the Board did not credit Thomas for the time he spent in drug treatment. Thomas was also denied credit on the original charges for a five month period of confinement associated with the criminal trespass charges, due to the Board's conclusion that Thomas had not posted bail in connection with those charges. [Id. at pp. 6-7]. [3]

In a letter dated September 14, 2010, Thomas sought an evidentiary hearing with respect to the Board's recalculation of his release date. He argued that the Board erred in failing to credit him for the period from January 21, 2009 to June 30, 2009 when he was incarcerated pursuant to the Board's warrant. He also argued that he should have received credit for time served at Gateway Braddock and Penn Pavilion. [ECF No. 1-3 at p.1]. Talaber responded to Thomas's request in a letter mailed November 12, 2010, which referred only to the denial of credit for time spent in substance abuse treatment. Talaber stated that an evidentiary hearing would be scheduled as to that issue. The letter did not mention the other miscalculation error raised by Thomas. [ECF No. 1-4].

The evidentiary hearing, in which Thomas was represented by counsel, took place on January 20, 2011. [ECF No. 1-5 at pp. 1-2]. The hearing transcript shows that Keller, the hearing

---

[3] This is relevant because, in Gaito v. Pennsylvania Bd. of Prob. and Parole, 412 A.2d 568 (1980), the Pennsylvania Supreme Court held that where a parole violator is arrested on new criminal charges, and satisfies bail on those charges so that he is thereafter incarcerated by virtue of a Board detainer, this period of incarceration is to be credited against his original sentence. If, however, the bail requirements on the new charges are not met, the period of custody is instead credited against any new sentence.

4

examiner, stated that the purpose of hearing was to determine whether Thomas was "entitled to credit for 36 days . . . spent at Gateway Braddock . . . [a]nd for . . . days spent at Penn Pavilion." [Id. at p. 7]. Before testimony was taken, Thomas's attorney stated that, consistent with the errors alleged in the request for a hearing, Thomas also wished to be heard on the issue of credit for the period of incarceration served from January to June 2009:

> The Parole Board warrant was prior, in other words, to the Allegheny County warrant. And therefore there's a credit issue with regard to the period from the date of his arrest to June 30, for which he's not been given credit either by the Parole Board, Department of Corrections, [or] Allegheny [C]ounty. And that was raised in the first issue in his administrative appeal. Unfortunately, I don't know if he was given credit for any of that or not because we don't have the order to recommit.

[Id. at p. 10]. Keller replied that the scope of the evidentiary hearing was limited to consideration of credit for time spent in "the two centers." [Id. at p. 11]. As to the other issue, Keller suggested that Thomas "contact the Board's Secretary's Office and request clarification as to those dates and/or [a] hearing for [the other] matter." [Id.]. Thomas's attorney responded, "I guess it's possible there could be a further decision. It says after evidentiary hearing, he may file a request, but I . . ." [Id.]. The hearing examiner interrupted to say that neither of the agents scheduled to testify had information bearing on the alternate credit issue. Counsel for Thomas stated that Thomas had the requisite information. [Id. at pp. 10-11]. Nonetheless, Keller declined to consider the question, but noted an objection to the need for two hearings. [Id. at p. 12].

In a decision mailed March 29, 2011, Thomas was denied credit for time spent in the treatment facilities. [ECF No. 1-6 at p. 2]. The denial was administratively affirmed in a determination mailed June 15, 2011. [Id]. Thomas then appealed to the Commonwealth Court of Pennsylvania. There, in addition to the question of credit for the time in treatment, the issue of credit for Thomas's five month period of incarceration was addressed. Counsel for the Board

5

argued that Thomas was confined from January 21, 2009 to June 30, 2009 on the trespass charges, and, because he had not posted bail, credit for this time served was not applied to the original sentence. Plaintiff countered that he *had* posted bail and, therefore, was entitled to credit on his original sentence. [ECF No. 1 ¶ 19]. In a decision dated April 13, 2012, the Commonwealth Court affirmed the decision of the Board with respect to time served in treatment. As to the Board's calculation of Thomas's maximum release date on his original sentence, the Court wrote:

> After completing his residential treatment program in 2008, Thomas was arrested for driving under the influence and drug related charges. Thomas posted bail on these 2008 charges, and he remained in custody as a technical parole violator pursuant to a Board detainer.
>
> While in custody, in January 2009, Thomas was charged with additional crimes in Allegheny County. In June 2009, he pled guilty to both the 2008 charges and the 2009 charges, and he was sentenced to a term of incarceration in a county facility.
>
> In addition, the Board issued a revocation decision recommitting Thomas as a convicted and technical parole violator. At that time, the Board recalculated the maximum expiration date of Thomas's original sentence. The Board's recalculation did not reduce Thomas's original sentence . . . as a result of the time he spent in custody after his January 2009 arrest while awaiting trial.

[Id. at pp. 2-3]. Because the Court could not determine from the record before it, whether Thomas had posted bail on the new charges, it remanded the question to the Board. [ECF No. 1-7 at pp. 8-9].

During its post-remand investigation, the Board uncovered a "technician error." Thomas had, as he averred in the evidentiary hearing, posted bail on the new charges in June 2010, and was entitled to a five month credit on his original sentence. The maximum release date on that

sentence should have been February 27, 2012 rather than August 5, 2012. Thomas was immediately released from custody. [Id. ¶ 21].

**Standard of Review**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the non-moving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). In Phillips, the United States Court of Appeals for the Third Circuit reiterated the Rule 12(b)(6) pleading requirements announced by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 and Ashcroft v. Iqbal, 556 U.S. 662 (2009). See Phillips, 515 F.3d at 233–34.

Motions to dismiss are evaluated pursuant to a three-pronged approach. First, the Court must identify the essential elements of the plaintiff's cause of action. Second, the Court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Iqbal, 566 U.S. at 664. A claim is plausible when the plaintiff pleads facts that allow the Court reasonably to infer that the defendant is liable for the conduct alleged. Gellman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Phillips, 515 F.3d at 234. With this standard in mind, the Court turns to the Complaint.

**Discussion**

The Fourteenth Amendment Claims Against McVey, Potteiger, White, and Barkley

Plaintiff contends that McVey, Potteiger, and White violated his Fourteenth Amendment rights by virtue of their role, at various times, as Chairpersons of the Board. He alleges that Barkley did the same in her role as Board Secretary. With respect to McVey, Plaintiff states: "McVey, acting under the authority of the Commonwealth of Pennsylvania, established and maintained a procedure in which the appeals process for calculations of maximum sentences did not afford prisoners the ability to have all of his [sic] claims heard at a hearing." [ECF No. 1 ¶ 35]. He also states that McVey failed "to establish a training process through which Board administrators and representatives can learn to accurately calculate sentences and provide adequate hearings to address miscalculation issues raised by prisoners." [Id. ¶ 36]. As to Potteiger and White, Thomas alleges that they maintained the procedures and processes put in place by McVey, and failed to review his sentence calculation after they were "informed of the issue through the appropriate channels." [Id. ¶ 37]. A failure to train claim is also made against Board Secretary, Barkley. These allegations echo the language of the Supreme Court in Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978) (holding that a municipality may be held liable where its "policy" or "custom" is the moving force behind a constitutional violation), and Canton v. Harris, 489 U.S. 378, 388-89 (1989) (finding that municipal liability may be based on supervisory officials' "failure to train" where the lack of training results in transgression of constitutional rights).

As Defendants point out, however, the principles announced in Monell and Canton do not apply where the supervisory defendant is a state employee. Although *municipal* officials may be subject to Section 1983 liability under Monell where their execution of a government policy or custom inflicts constitutional injury, or under the "failure to train" theory adopted in Canton, the same is not true for state officials. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71

(1989) (instructing that "suit against [state] official in  his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is no different from suit against the state itself). See also O'Hara v. Indiana Univ. of Pennsylvania, 171 F. Supp. 490, 499 (W.D. Pa 2001) (observing that holdings in Monell and its progeny are limited to local government entities and their employees; when state government entities their employees are sued in their official capacities, they are protected by sovereign immunity under the Eleventh Amendment to the United States Constitution).

Plaintiff fails to indicate in his Complaint whether he intended to sue Defendants in their official or individual capacities. Insofar as any of the Defendants are sued in their official capacities, the claims against them must be dismissed. "[I]n their official capacities, the Defendants enjoy Eleventh Amendment immunity from damage suits such as this one." Goodwine v. Keller, Civil Action No. 09-1592, 2011 WL 1099256 at *3 (W.D. Pa. March 22, 2011) (citing Wood v. Pennsylvania Bd. of Prob. and Parole, No. 08-761, 2009 WL 1913301 at *3 (W.D. Pa. July 2, 2009)) ("The Pennsylvania Board of Probation and Parole and its employees in their official capacities are an arm of the Commonwealth entitled to Eleventh Amendment immunity.") (citation omitted).

In order to state a Section 1983 claim against state officials in their individual capacities, a plaintiff must allege facts sufficient to raise a plausible inference that defendants were personally involved in violating the plaintiff's constitutional rights. See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Plaintiff concedes that he has failed to allege the requisite personal involvement on the part of McVey, Talaber, or Potteiger. [ECF No. 16 at p. 3]. Thus, the Motion to Dismiss filed on behalf of these Defendants will be granted with prejudice.

Thomas argues that claims against the remaining Defendants are adequate to survive the

Motion to Dismiss. The Court, therefore, turns, seriatim, to the allegations implicating Barkley, Keller, and Talaber.

## Claims Against Barkley

The Fourteenth Amendment claim against Barkley is set out in three portions of the Complaint. First, Thomas states that Barkley, as the Board's Acting Secretary, "signed off on the Notice of Board Decision mailed September 9 2010." [ECF No. 1 ¶ 15]. In that decision, Thomas's maximum release date was set at August 5, 2012. Barkley also signed the July 12, 2012 letter in which the Board notified Thomas that there had been a "technician error" in its sentence calculation. [Id. ¶ 21]. Neither of these facts raises a plausible inference that Barkley was responsible for calculating Thomas's release date, or that she participated personally in any violation of Thomas's rights. The Complaint refers to Barkley in only one additional sentence:

> Based on information and belief, . . . Barkley . . . subjected Plaintiff to a due process violation by failing to establish a training process through which Hearing Examiners and other officials can learn to accurately calculate sentences and provide adequate hearings to address miscalculation issues raised by prisoners.

[Id. ¶ 39]. As the Court has explained, this failure to train theory based on Canton does not provide a basis for holding state employees liable under Section 1983. Because the claim against Barkley is inadequate under the Twombly/Iqbal standard and does not fall within the parameters of Canton. It will be dismissed.

## Claims Against Keller

Thomas's claims against Keller stem from his role as hearing examiner in the evidentiary hearing reviewing the calculation of Thomas's release date. Thomas faults Keller for declining to consider the issue of credit due for the five months Thomas spent in the Allegheny County Jail. Whether Keller should have considered this issue is irrelevant. During the hearing, he acted

"solely in an adjudicatory capacity and [is] entitled to absolute immunity." Goodwine, at *6 (citing Wilson v. Daub, No. 12-0471, at *2 (E.D. Pa. March 2, 2012). Accordingly, the Complaint against Keller will be dismissed.

Claims Against Talaber

Thomas alleges that Talaber scheduled an evidentiary hearing limited to Plaintiff's entitlement to credit for time spent in the Gateway Braddock and Penn Pavilion programs, and ignored the other credit-related issue. [ECF No. 1 ¶17]. According to Thomas, his Eighth and Fourteenth Amendment rights were violated by Talaber's failure to specify in the notice of evidentiary hearing that *all* computation-related were to be considered. "Had . . . Talaber addressed [the other credit] issue, the miscalculation would have been reviewed, and Plaintiff would not have been imprisoned beyond the length of his sentence." [Id. ¶ 28].

"Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and [un]usual punishment . . . [C]ases of this sort are extremely rare . . . ." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "[N]ot every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Id. at 686 (quoting Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989). Even when the allegations involving Talaber are viewed in the light most favorable to Thomas, they are insufficient to state an Eighth Amendment claim. In order to survive the pending Motion to Dismiss with respect to the Eighth Amendment claims, Thomas must have alleged facts sufficient to raise a plausible inference that Talaber's actions went beyond mere negligence, amounting instead to deliberate indifference. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). A showing of deliberate indifference requires facts showing that Talaber knew of Thomas's problem and was subjectively aware that the failure to mention the five month credit

11

issue in the evidentiary hearing notice posed a substantial risk that Thomas's constitutional rights would be violated. See Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010); Stackhouse v. Lanigan, Civil Action No. 12-0072, 2013 WL 2182308 at *3 (D.N.J. May 20, 2013). Second, Thomas must have alleged that Talaber, knowing of the risk, failed to act or took only ineffectual action to avoid it. Id.[4] Last, Thomas must cite facts demonstrating a causal connection between Talaber's action or inaction and Thomas's overstay. Id.

Even assuming, arguendo, that the allegations in the Complaint are sufficient to satisfy the first two requirements, they do not raise a plausible inference that Talaber's framing of the issue to be addressed at the evidentiary hearing was the cause of Thomas's overstay. The issue of the five month credit was, in fact, raised at the evidentiary hearing, but was not resolved because those attending did not have the information necessary to document Thomas's contention. [ECF No. 1-5 at p. 11]. Thomas's own attorney was not prepared to speak to whether Thomas had received the disputed credit: "Unfortunately, I don't know if [Thomas] was given credit for any of that because we don't have the order to recommit." [Id. at p. 10]. Thomas was advised that he should "contact the Board Secretary's Office and request clarification as to the relevant dates and/or [file a request for] a hearing with respect to that issue." The Complaint does not allege that Thomas did or was prevented from doing either

In addition to having raised the five month credit issue in the original hearing, Thomas again raised the issue in his petition for administrative review of the hearing examiner's decision. His argument was considered and rejected on the ground that he failed to show that he had posted bail on the charges associated with his 2009 arrest. There was "no indication that

---

[4] Significantly, there is no allegation that the Board, in the regular process of conducting administrative review, limited its review to the issue or issues specified in the notification to the inmate, or that the administrative process could have been expected to remain open past the release date calculated by Thomas.

[Thomas] posted bail from the criminal charges, and [he] did not claim [in his appeal] that he posted bail." [ECF No. 1-7 at p. 9 (quoting the Certified Record of proceedings before the Secretary at p. 264)]. Absent that evidence, Thomas could not establish, under the requirements announced in Gaito, 412 A.2d at 568, that he was entitled to the five month credit.

Thomas then filed a petition in the Commonwealth Court of Pennsylvania, seeking review of the Order denying his request for administrative relief. In its decision dated March 2, 2012, the Commonwealth Court discussed the fact that the five month credit issue had not been resolved, and remanded that portion of Thomas's appeal to the Board. See [ECF No. 1-7]. On remand, the Board determined that Thomas did post bail and was, therefore, entitled to the five month credit. By the time the error in the Board's original calculation was confirmed, Thomas had been incarcerated for five months beyond his release date.

Given all that transpired between Talaber's framing the issue to be decided at the evidentiary hearing – including Thomas's apparent failure to file a request for a second evidentiary hearing and his failure to adduce evidence that he had posted bond on the 2009 charges - it is impossible to conclude that Talaber's actions caused Thomas's overstay. Though the issue may not have appeared on the administrative hearing agenda, it was, in fact, addressed at every level. The Eighth Amendment claim against Talaber is inadequately supported by the facts alleged and will, therefore, be dismissed.

The same is true with regard to the Fourteenth Amendment claims against Talaber. As the discussion of the Eighth Amendment claim makes clear, Thomas's claim for credit based on his incarceration after the 2009 charges was considered, and ultimately vindicated in the administrative and subsequent judicial proceedings. Talaber's actions did not deprive Thomas of a meaningful opportunity to be heard.

**Conclusion**

For the reasons set forth above, the Court will grant the Motion to Dismiss [ECF No. 9] as to Defendants Barkley, McVey, Potteiger, White, and Keller with prejudice, based on its finding that amendment of the Complaint as to these Defendants would be futile. In an abundance of caution, the Court will grant the Motion to Dismiss as to Talaber without prejudice. Should Thomas conclude that he is able to allege additional facts involving Talaber which are sufficient to meet the Twombly standard, Plaintiff may file an Amended Complaint. An appropriate Order follows.

September 6, 2013

By the Court,

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: Counsel of Record via CM-ECF